1  LOEB & LOEB LLP
   OLEG STOLYAR (SBN 229265)
2  astolyar@loeb.com
   JENNIFER JASON (SBN 274142)
3  jjason@loeb.com
   10100 Santa Monica Blvd., Suite 2200
4  Los Angeles, CA 90067
   Telephone: 310.282.2000
5  Facsimile: 310.282.2200

FILED

6
   Attorneys for Applicant
7  AMBERCROFT TRADING LIMITED

APR 27 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8

9

10

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                        SAN FRANCISCO DIVISION

14

15  In Re Ex Parte Application of Ambercroft        Case No. CV 18 80 074 MISC KAW
    Trading Limited for Order to Obtain
16  Discovery for Use in Foreign Proceeding         MEMORANDUM OF LAW IN SUPPORT
                                                    OF *EX PARTE* APPLICATION OF
17                                                  AMBERCROFT TRADING LIMITED
                                                    FOR AN ORDER PURSUANT TO 28
18                                                  U.S.C. § 1782(a) TO OBTAIN
                                                    DISCOVERY FOR USE IN A FOREIGN
19                                                  PROCEEDING

20

21

22

23

24

25

26

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118343.1
230322-10001

MEMORANDUM OF LAW IN SUPPORT OF EX PARTE
APPLICATION OF AMBERCROFT TRADING LIMITED

1    Applicant Ambercroft Trading Limited ("Ambercroft"), by and through its undersigned

2  counsel, Loeb & Loeb LLP, respectfully submits this Memorandum of Law in support of its *Ex*

3  *Parte* Application for Order to Obtain Discovery for Use in Foreign Proceeding pursuant to 28

4  U.S.C. § 1782(a) (the "Application"), and states as follows:

5  **I.    PRELIMINARY STATEMENT**

6    Ambercroft respectfully applies for an order of judicial assistance, pursuant to 28 U.S.C.

7  § 1782(a), authorizing it to take discovery from Astro Digital US, Inc. and Damir Begishev

8  (collectively, "Respondents"), both of which reside in the Northern District of California, for use

9  in a contemplated foreign proceeding (the "Foreign Proceeding") before the Commercial Division

10  of the High Court of the British Virgin Islands (the "Commercial Court") by Ambercroft against

11  Mikhail Kokorich ("Kokorich"), Dauria Holding International Limited ("DHIL"), and Dauria

12  Aerospace Holding Limited ("DASH") (collectively, the "Defendants").[1]

13    The Foreign Proceeding will seek redress for the scheme perpetrated against Ambercroft,

14  as a member of DHIL and beneficial owner of DASH, by Kokorich, who was at all relevant times

15  (and still is) the majority shareholder of DHIL and the chief executive officer of DASH.  As

16  explained in further detail below, Kokorich used his control over DHIL and DASH to transfer

17  some of DASH's key assets (including several space satellites), held by a DASH subsidiary –

18  Canopus Systems US LLC ("Canopus"), to another company owned and/or controlled by

19  Kokorich – Aquila Space Inc. ("Aquila), which later changed its name to Astro Digital US, Inc.

20  ("ADU"), for inadequate consideration.[2]

21    This scheme was implemented through Kokorich's termination of independent officers

22  providing financial oversight for DASH and its subsidiaries in 2014, such as the Chief Financial

23  Officer and Treasurer and Controller, and subsequent transfers of Canopus' assets and funds to

24  ADU in 2015, in violation of Defendants' contractual, statutory and common law duties to

25

26

27    [1]    At all relevant times, DHIL was the majority shareholder of DASH.

28    [2]    Aquila changed its name to Astro Digital US, Inc. on May 17, 2016. Declaration of Oleg
Stolyar ("Stolyar Decl."), Ex. 1.  Hereinafter, all references to ADU will include Aquila.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

1

16118343.1          MEMORANDUM OF LAW IN SUPPORT OF EX PARTE
230322-10001        APPLICATION OF AMBERCROFT TRADING LIMITED

1   Ambercroft under applicable law. Thus, Ambercroft intends to assert claims against Defendants in
2   the Foreign Proceeding for, *inter alia*, breach of fiduciary duty.

3          The sought discovery – consisting of a subpoena commanding attendance at deposition and
4   production of documents to Mr. Begishev (the Chief Financial Officer at both Canopus and ADU
5   during the pertinent time period), as well as subpoenas seeking production of documents and
6   testimony from the person most knowledgeable within ADU – is directly relevant to the Foreign
7   Proceeding. Among other things, these three subpoenas will help to establish: (i) Kokorich's
8   ownership and/or control of Aquila/ADU; (ii) the lack of adequate consideration in exchange for
9   the asset transfers at issue between Canopus and Aquila; and (iii) the methods of transfer, use, and
10   ultimate destination of the funds and assets diverted to Aquila (now ADU).

11        As demonstrated below, the Application satisfies the statutory requirements of 28 U.S.C.
12   § 1782, because: (1) ADU and Mr. Begishev both "reside" or are "found" in this district; (2)
13   Ambercroft is an "interested person," as a party to the contemplated Foreign Proceeding; and (3)
14   the Foreign Proceeding will be filed before the Commercial Court (a foreign tribunal), and the
15   information obtained will be for use in that Foreign Proceeding.

16        The Application also meets all of the discretionary requirements necessary to obtain
17   discovery under Section 1782, because: (i) ADU and Mr. Begishev are not, and will not be,
18   participants in the Foreign Proceeding; (ii) Ambercroft is not seeking to circumvent any
19   requirements of the law of the British Virgin Islands by making this Application; (iii) courts in the
20   British Virgin Islands are receptive to this form of discovery; and (iv) the requested discovery is
21   narrow in both time and scope and, thus, not unduly intrusive or burdensome.

22        Accordingly, Ambercroft respectfully requests that this Application be granted, and an
23   Order be issued authorizing the discovery and other relief requested in the Application. The
24   discovery will be served on ADU and Mr. Begishev for production of relevant documents in their
25   possession, custody and/or control, as well as their depositions under Rule 30 of the Federal Rules
26   of Civil Procedure.

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118343.1
230322-10001

2

MEMORANDUM OF LAW IN SUPPORT OF EX PARTE
APPLICATION OF AMBERCROFT TRADING LIMITED

1

## II.    FACTUAL BACKGROUND

2

### A.    The Parties to the Foreign Proceeding.

3

1.    Dauria Aerospace Holding Limited

4   DASH is a company incorporated under the laws of the Republic of Cyprus. DASH is a
5   holding company which, through its various subsidiaries, develops and manufactures small low-
6   cost satellites for remote sensing and other applications; designs and constructs spacecraft and
7   modules; develops technological approaches to perform different missions based on micro and
8   nano satellites; and provides cost-effective engineering, production and technical management
9   expertise for space-related science and commercial programs. Declaration of Oliver Clifton
10   ("Clifton Decl."), ¶ 6. During the pertinent time period, Canopus was one of DASH's key
11   subsidiaries, as it owned DASH's highly valuable Perseus-M satellites. *Id.*

12

2.    Dauria Holding International Limited

13   DHIL is a holding company organized and registered under the laws of the British Virgin
14   Islands. At all relevant times DHIL was a majority shareholder of DASH. Thus, the business and
15   assets of DHIL are comprised of the business and assets held by DASH and DASH's subsidiaries,
16   including Canopus. Indeed, the Articles of Association of DHIL, at Articles 14.1(a), (e), (f), and
17   (g), have provisions that deal expressly and purposefully with the business of DASH. Clifton
18   Decl., Ex. 1.

19

3.    Mikhail Kokorich

20   Mikhail Kokorich was born in Russia, but currently resides in California. Kokorich has a
21   controlling interest in DHIL through Glounec Investments Limited, a company registered in the
22   British Virgin Islands. Beginning in June 2014 and continuing throughout the relevant time
23   period, Kokorich served as Chief Executive Officer ("CEO") of DASH. Kokorich also was
24   responsible for the day-to-day operations of Canopus and the other United States subsidiaries of
25   DASH, and he moved to California from Russia to carry out those responsibilities. Clifton Decl.,
26   ¶ 8.

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118343.1
230322-10001

3

MEMORANDUM OF LAW IN SUPPORT OF EX PARTE
APPLICATION OF AMBERCROFT TRADING LIMITED

1          4.     Ambercroft Trading Limited

2          Ambercroft is a company registered in the British Virgin Islands.  Pursuant to the Investors

3    and Shareholders Agreement dated September 16, 2013, Ambercroft was at all relevant times a

4    minority shareholder in DHIL.  Clifton Decl., Ex. 2.

5          **B.     The Defendants' Unlawful Scheme.**

6          The contemplated Foreign Proceeding centers around Kokorich's abuse of his control of

7    DHIL and DASH to transfer key assets from one of DASH's subsidiaries (Canopus) to ADU – an

8    unrelated company that Kokorich owned and/or controlled.  In doing so, Kokorich breached his

9    legal duties to Ambercroft as a member of DHIL and a beneficial owner of DASH and Canopus.

10          1.     Kokorich Fires Key Personnel Providing Financial Oversight for DASH and

11               Its Subsidiaries.

12          On May 29, 2014, the Managing Director in charge of finance strategy and mergers and

13   acquisitions for DASH and its subsidiaries (Dmitry Kushaev), was terminated after he began

14   questioning various financial improprieties, including excessive unsupported expenditures and the

15   apparent diversion of funds in connection with DASH's U.S. operations through its subsidiaries.

16   Clifton Decl., ¶ 11.

17          At or about the same time, Kokorich fired the Chief Financial Officer (Dmitry Sokolsky)

18   and the Group Treasurer and Controller (Maria Pershina) for DASH and its subsidiaries.  Clifton

19   Decl., ¶ 12, Ex. 3.  Notably, after first claiming that Mr. Sokolsky left voluntarily, Kokorich

20   admitted that he unilaterally terminated him.  *Id*.  These individuals were fired after they began

21   requesting financial back-up and explanations for various expenditures of funds and transactions

22   by DASH's U.S. subsidiaries, including Canopus.  *Id*. ¶ 12.

23          2.     The Transfers from Canopus to Aquila.

24          Between March and April 2015, after Kokorich had removed the above-referenced

25   individuals who provided financial oversight for the company, a series of transactions was made

26   between Canopus and Aquila (now known as ADU) without notice to Ambercroft or DASH's

27   board of directors.  Aquila was formed at the direction of Kokorich only a few months prior to

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118343.1
230322-10001

4
MEMORANDUM OF LAW IN SUPPORT OF EX PARTE
APPLICATION OF AMBERCROFT TRADING LIMITED

1    those transfers, and was created with the clear purpose of receiving and taking over the assets and
2    business of Canopus specifically, and DASH generally. Clifton Decl., ¶¶ 13-14.

3    Specifically, Mr. Kokorich caused Canopus to enter into agreements with Aquila by which
4    it transferred to Aquila two Perseus-M satellites launched in 2014 and still in orbit, as well as
5    valuable intellectual property. The market value of the satellites in question was well over $5
6    million. Nonetheless, DASH purportedly received just over $2 million total for both satellites, far
7    below their true market value. Clifton Decl., ¶ 15. These agreements were unfair to DASH and
8    provided it insufficient consideration for the valuable satellites. Clifton Decl., ¶ 16.

9    Following this diversion of DASH's key assets to Aquila, Kokorich and Aquila
10   immediately went into competition with DASH, using DASH's tangible assets, intellectual
11   property, and goodwill base as Aquila's own. Clifton Decl., ¶ 18. Indeed, there is substantial
12   overlap between the employees and management of Aquila/ADU and Canopus, with those persons
13   simply moving from Canopus to Aquila. *Id.*

14   Moreover, Kokorich has marketed Aquila (now ADU) as the operator of the two Perseus-
15   M satellites, and has subsequently caused ADU to enter into agreements with companies with
16   which DASH was previously in negotiations. Clifton Decl., ¶ 19. ADU also has attempted to
17   secure, and has secured, funds from sources that could otherwise provide funds to DASH. For
18   example, ADU secured over ten million dollars from investors in 2016 and early 2017. *Id.*
19   Presumably, these investments were obtained, in large part, based on ADU's use of the assets and
20   intellectual property transferred from Canopus to ADU by Kokorich.

21   Notably, all of the above wrongful conduct occurred while Kokorich was still the chief
22   executive officer of DASH. In the meantime, Canopus appears to have gone out of business after
23   Kokorich's scheme was implemented, with Canopus' agent for service of process resigning in late
24   2015, and no current agent for service of process registered in California. Stolyar Decl., Ex. 2.

25       3.    Kokorich's Unlawful Scheme to Gain Control of the DASH Board.
26   In order to ratify the unfair sale of DASH's assets for inadequate consideration, Mr.
27   Kokorich needed to gain control of DASH's board of directors. To that end, in 2015, Mr.

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118343.1
230322-10001

MEMORANDUM OF LAW IN SUPPORT OF EX PARTE
APPLICATION OF AMBERCROFT TRADING LIMITED

1 Kokorich convened a procedurally improper meeting of the DHIL shareholders. Clifton Decl.,

2 ¶ 20.

3 As part of its articles of association, DHIL has the authority to appoint the board of
4 directors of DASH, but such decision requires the approval of *90 percent* of the shares carrying the
5 right to vote at general meetings, thus, protecting the rights of minority members like Ambercroft.
6 On August 4, 2015, Mr. Kokorich attempted to convene a meeting of the members of DHIL for
7 August 10, 2015, for the purpose of making changes to the DASH board of directors. However,
8 inadequate notice of this proposed meeting was given to Ambercroft and the other DHIL members.
9 Clifton Decl., ¶ 21.

10 Despite being advised that the notice for the August 10 meeting was improper and that the
11 director appointed by and representing Ambercroft (Dmitri Kushaev) would be unable to attend,
12 Mr. Kokorich nonetheless convened the meeting at which certain changes to the composition of
13 DASH's board were voted on and approved. These changes to the DASH board were approved
14 notwithstanding the fact that *less than 90 percent* of the DHIL shares with the right to vote voted
15 in favor of that change, in breach of DHIL's Articles of Association. *Id.*

16 4. Efforts to Informally Resolve the Dispute Prove Unsuccessful.

17 Following the above-referenced unlawful transfer of key assets, Ambercroft demanded that
18 Defendants remedy Kokorich's misconduct. Clifton Decl., ¶ 24, Ex. 4. Ambercroft then engaged in
19 protracted negotiations with Defendants, which proved unsuccessful. *Id.*

20 As a result, on December 7, 2017, Ambercroft sent a demand letter to Defendants stating
21 that it intends to file an action against the Defendants in the Commercial Court unless Defendants
22 compensate Ambercroft for its damages. Clifton Decl., Ex. 5. Defendants responded in late
23 January 2018, rejecting Ambercroft's settlement proposal.

24 Given Defendants' ongoing refusal to remedy Kokorich's misconduct, Ambercroft intends
25 to file the Foreign Proceeding against Defendants in the near future.

26 **III. ARGUMENT**

27 The Supreme Court has ruled that Congress authorized broad discovery in connection with
28 foreign proceedings via its enactment of 28 U.S.C. § 1782. *See Intel Corp. v. Advanced Micro*

6

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118343.1
230322-10001

MEMORANDUM OF LAW IN SUPPORT OF EX PARTE
APPLICATION OF AMBERCROFT TRADING LIMITED

1  *Devices, Inc.*, 542 U.S. 241, 259 (2004). *See also London v. Does 1-4*, 279 F. App'x 513, 515 (9th

2  Cir. 2008). This Application presents a paradigmatic case for granting such discovery assistance.

### A.    There Is Good Cause to Grant This Application *Ex Parte*.

4  Applications for discovery pursuant to 28 U.S.C. § 1782 may be granted without first

5  giving notice to the party from whom discovery is sought. *See, e.g., In re Republic of Ecuador*,

6  2010 WL 3702427, *2 (N.D. Cal. Sept. 15, 2010). A review of cases citing *Intel* reveals that the

7  use of *ex parte* applications is "widespread" and frequently "unremarked upon (and thus

8  approved *sub silentio*)." *In re Ex Parte Application of Societe d'Etude de Realisation et*

9  *d'Exploitation Pour le Traitment du Mais*, 2013 WL 6164435, at *2 fn. 1 (E.D. Pa. Nov. 22, 2013)

10  (collecting cases); see also *In re: Application of Joint Stock Co. Raiffeinsenbank*, 2016 WL

11  6474224, at *3 (N.D. Cal. Nov. 2, 2016) ("[Section] 1782 petitions are regularly reviewed on an *ex*

12  *parte* basis.")

13  "[R]espondent's due process rights are not violated because [it] can later challenge any

14  discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)."

15  *Gushlak v. Gushlak*, 486 Fed. Appx. 215, 217 (2d Cir. 2012). Thus, there is no prejudice to ADU

16  or Mr. Begishev in issuing the requested subpoenas, since they will have an opportunity to object

17  to and/or move to quash those subpoenas.

### B.    The Application Meets All Three Statutory Requirements of Section 1782.

19  Section 1782 grants a United States District Court the authority to order a person or entity

20  residing in its district to produce documents or give testimony for use in a foreign proceeding:

> The District Court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusations. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or **upon the application of any interested person** and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

26  28 U.S.C. § 1782(a) (emphasis added).

7

16118343.1
230322-10001
MEMORANDUM OF LAW IN SUPPORT OF EX PARTE
APPLICATION OF AMBERCROFT TRADING LIMITED

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

1    This Court has held that the statute establishes a three-part test when deciding whether to
2  grant a Section 1782 application: "(1) the discovery sought is from a person residing in the district
3  court to which the application is made; (2) the discovery is for use in a proceeding before a foreign
4  tribunal; and (3) the applicant is a foreign or international tribunal or an interested person." *In re:*
5  *Application of Joint Stock Co. Raiffeinsenbank*, No. 16-MC-80203-MEJ, 2016 WL 6474224, at \*2
6  (N.D. Cal. Nov. 2, 2016) (citations and internal quotation marks omitted). Ambercroft easily
7  satisfies each of these three requirements.

8              1.    ADU and Mr. Begishev "Reside" and Are "Found" in This District.

9    Aquila, which now does business under the name of Astro Digital US, Inc., lists its address
10  as 340 Cody Road, Building 503, Moffett Field, CA 94035. Stolyar Decl., Exs. 1, 3. Mr.
11  Begishev resides at 214 Sherland Ave., Mountain View, CA 94043. *Id.*

12    Thus, ADU and Mr. Begishev both "reside" and are "found" in the Northern District of
13  California. *See In re Request for Int'l Judicial Assistance From the Nat'l Court of Original*
14  *Jurisdiction No.18 in Buenos Aires, Argentina,* No. 16-MC-80204-JSC, 2016 WL 5462634, at \*1
15  (N.D. Cal. Sept. 29, 2016) (holding that a company headquartered in San Francisco resides in the
16  Northern District of California)*; see also In re Grupo Unidos por el Canal, S.A.*, No. 14-MC-
17  80277JST (DMR), 2014 WL 5456520, at \*2 (N.D. Cal. Oct. 27, 2014) (same).

18              2.    The Application Seeks Discovery for Use in a "Foreign Proceeding."

19    The discovery sought in this Application is for use in a foreign proceeding. Ambercroft is
20  contemplating bringing an action against Defendants in the Commercial Court, where DHIL is
21  registered. Indeed, the discovery sought from ADU and Mr. Begishev will be fundamental in
22  proving the lack of adequate consideration for the transfers of Canopus' assets to Aquila, as well
23  as Kokorich's ultimate ownership of Aquila/ADU.

24    This satisfies the second statutory requirement of Section 1782. *See Akebia Therapeutics,*
25  *Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1111 (9th Cir. 2015) (holding that the foreign proceeding
26  must be in front of a foreign tribunal, which includes "investigating magistrates, administrative
27  and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial,
28  criminal, and administrative courts."); *In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010) (the

8

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118343.1
230322-10001

MEMORANDUM OF LAW IN SUPPORT OF EX PARTE
APPLICATION OF AMBERCROFT TRADING LIMITED

1  burden on an applicant to demonstrate that discovery will be "for use" in a foreign proceeding is
2  "*de minimis*").

3  Notably, Section 1782 does not require that the foreign proceeding be pending, but rather
4  that it be **within "reasonable contemplation."** *Intel*, 542 U.S. at 259 (emphasis added); *see also*
5  *Mees v. Buiter*, 793 F.3d 291, 301 (2d Cir. 2015) (party satisfied the second prong of Section 1782
6  "by showing that the materials she seeks are to be used at some stage of a foreign proceeding that
7  was **within reasonable contemplation** at the time of the [application]") (emphasis added).

8  The lawsuit in BVI is "within reasonable contemplation." "[C]ourts have transitioned
9  from a narrow interpretation of the 'for use in a foreign proceeding' element of Section 1782, to a
10  far more liberal construction today." *In re Furstenberg Finance SAS*, 2016 WL 10707012, at \*5-6
11  (S.D. Fla. Jul. 27, 2016). An applicant must simply satisfy the court that the anticipated
12  proceeding is not merely speculative and "more than just a twinkle in counsel's eye." *In re Kiobel*,
13  2017 WL 354183, at \*3 (S.D.N.Y. Jan. 24, 2017) (citing *Certain Funds, Accounts and/or Inv.*
14  *Vehicles v. KPMG LLP*, 798 F.3d 113, 123-24 (2d Cir. 2015)).

15  Ambercroft easily meets this standard. As made clear by the description of the relevant
16  facts above, Ambercroft has already made inquiries and conducted an in-depth investigation of the
17  relevant facts and outlined legal theories that it intends to advocate before the BVI court. *See, e.g.,*
18  *Bravo Express Corp. v. Total Petrochemicals & Refining U.S.*, 613 Fed. Appx. 319, 323 (5th Cir.
19  2015) (awarding discovery when applicant "filed, with its § 1782(a) application, a sworn affidavit
20  . . . lay[ing] out, in great detail, the facts that give rise to the prospective lawsuit").

21  Indeed, Ambercroft has already advanced its claims far beyond the hypothetical or
22  speculative stage through its delivery to Defendants of two separate demand letters. *See LEG Q*
23  *LLC v. RSR Corp.*, 2017 WL 3780213, \*6 (N.D. Tex. Aug. 31, 2017) (proceeding was reasonably
24  contemplated when applicant had "served a Letter Before Action on the intended defendants in the
25  English Derivative Action and is in the midst of the pre-action correspondence process that
26  typically precedes the filing of a shareholder derivative action in the English High Court"); *In re*
27  *Kiobel*, 2017 WL 354183, at \*3 (S.D.N.Y. Jan. 24, 2017) (proceeding was reasonably
28  contemplated when applicant had *inter alia* written a "liability letter" to the putative defendant).

9

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118343.1
230322-10001

MEMORANDUM OF LAW IN SUPPORT OF EX PARTE
APPLICATION OF AMBERCROFT TRADING LIMITED

1          3.     Ambercroft Is an "Interested Person" in the Foreign Proceeding.

2          As a victim of Kokorich's unlawful transfer of assets, Ambercroft is reasonably

3   contemplating filing an action against Defendants before the Commercial Court. As the *plaintiff*

4   in the contemplated Foreign Proceeding, Ambercroft is obviously an "interested person" within

5   the meaning of Section 1782. *See, e.g., Intel*, 542 U.S. at 256 (holding that an interested party is

6   any person with a "reasonable interest in obtaining the assistance"); *see also Akebia Therapeutics*,

7   793 F.3d at 1110–11 (a party to the foreign proceeding underlying the case is an "interested

8   person" because it has a "reasonable interest" in obtaining judicial assistance and, therefore, "may

9   apply for judicial assistance pursuant to § 1782").

10         **C.     The Discretionary Factors Also Weigh Heavily in Favor of Ambercroft.**

11         Once it has been determined that a Section 1782 applicant satisfies the three statutory

12  requirements set forth above, the reviewing court should consider four factors in deciding whether

13  to exercise its discretion to order the requested discovery: "(i) whether [respondent's] status as a

14  participant in the foreign proceeding lessens the need to seek discovery under section 1782; (ii) the

15  nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity

16  of the foreign . . . court . . . to U.S. federal-court judicial assistance; (iii) whether the Section 1782

17  request conceals an effort to circumvent foreign proof-gathering restrictions; and (iv) whether the

18  discovery requests are unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65; *see also*

19  *London*, 279 F. App'x at 515. Here, each of these four *Intel* discretionary factors weighs heavily

20  in favor of granting the Application.

21         First, as indicated by the Supreme Court, a favorable exercise of discretion is most

22  warranted where the respondents from whom discovery is sought are not parties to the foreign

23  proceeding, because such respondents "may be outside the foreign tribunal's jurisdictional reach"

24  and "their evidence, available in the United States, may be unobtainable without § 1782 aid."

25  *Intel*, 542 U.S. at 264.

26         Here, ADU and Mr. Begishev will *not* be parties or participants in the Foreign Proceeding.

27  Clifton Decl., ¶ 31. Thus, this factor weighs heavily in favor of granting the Application. *See,*

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118343.1
230322-10001

10

MEMORANDUM OF LAW IN SUPPORT OF EX PARTE
APPLICATION OF AMBERCROFT TRADING LIMITED

1  *e.g., In re Chevron Corp*, 753 F. Supp. 2d 536, 539 (D. Md. 2010) (where "neither respondents . . .
2  are parties the [foreign] [l]itigation . . . **this factor is completely satisfied.**") (Emphasis added.)

3      Second, a reviewing court is not required to speculate on what will or will not be
4  considered by a foreign tribunal. Rather, the court merely needs to determine whether an opposing
5  party could carry its burden that a foreign tribunal would *not* consider the discovery sought. *See,*
6  *e.g., In re Application of Gilead Pharmasset LLC*, 2015 WL 1903957, at *3 (D. Del. April 14,
7  2015) ("The party opposing discovery bears the burden of persuading the court that the foreign
8  tribunal would not consider the discovery sought by the § 1782 order."); *Republic of Ecuador*,
9  2010 WL 4027740, at *2 (granting Section 1782 discovery when there was no evidence "that the
10  arbitral tribunal would not be receptive to such"); *see also In re: Ex Parte Application Varian Med.*
11  *Sys. Int'l AG*, No. 16-MC-80048-MEJ, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016) ("In
12  the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the
13  aid of section 1782," courts tend to **"err on the side of permitting discovery**.") (emphasis
14  added).

15      Courts have already considered this issue with respect to the British Virgin Islands
16  ("BVI"), and have not found that BVI courts would be unreceptive to evidence garnered from
17  Section 1782 discovery. *See, e.g., In re Application of Bracha Foundation Request for Discovery*
18  *Pursuant to 28 U.S.C. §1782*, 2015 WL 6123204, at *4 (N.D. Ala. Oct. 19, 2015) (permitting
19  discovery under section 1782 and noting that "this court has no reason to believe that the BVI
20  tribunal would not be receptive to judicial assistance by U.S. federal courts"), affirmed in relevant
21  part by 663 Fed.Appx. 755 (11th Cir. 2016). *See also* Clifton Decl., ¶ 29 (stating that BVI courts
22  should be receptive to the discovery sought here). Thus, this factor also weighs in favor of
23  granting the Application.

24      Third, allowing the requested discovery in this case would not circumvent any proof-
25  gathering restrictions imposed by the courts of the British Virgin Islands. Ambercroft and its
26  counsel are unaware of any restrictions imposed by those courts in proof-gathering procedures that
27  would prohibit Ambercroft from obtaining and introducing the discovery Ambercroft seeks
28  through Section 1782. *See* Clifton Decl., ¶ 29. *See also Intel*, 542 U.S. at 265.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118343.1
230322-10001

MEMORANDUM OF LAW IN SUPPORT OF EX PARTE
APPLICATION OF AMBERCROFT TRADING LIMITED

1    Notably, there is no requirement that a section 1782 applicant make a threshold showing
2  that the discovery sought be actually discoverable in the foreign proceeding. *Intel*, 542 U.S. at
3  260 (Section 1782 does not condition discovery on proof that the information sought would be
4  discoverable in the foreign courts). Rather, the appropriate inquiry under this factor is whether the
5  applicant is seeking the discovery in good faith. *See Crayolife, Inc. v. Tenaxis Med., Inc.*, 2009
6  WL 88348, at *1 (N.D. Cal. Jan 13, 2009) (finding in favor of the applicant if "there is no basis to
7  conclude that the requested discovery is for anything other than use in the lawsuit pending" in the
8  foreign jurisdiction). Here, Ambercroft is clearly acting in good faith, as it is seeking to obtain
9  limited discovery which is directly relevant to its claims in the Foreign Proceeding.

10    Fourth, the requested discovery is neither unduly intrusive nor burdensome. Requests only
11  become "unduly intrusive and burdensome" where they are "not narrowly tailored, request
12  confidential information and appear to be a broad 'fishing expedition' for irrelevant information."
13  *In re ex parte Application of Qualcomm*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016).

14    Here, in contrast, the Application merely seeks authorization to issue subpoenas for two
15  depositions and related document requests that are highly relevant to Ambercroft's claims against
16  Defendants in the Foreign Proceeding, from two Respondents that are not parties to those
17  proceedings. Specifically, Ambercroft seeks to obtain documents and testimony relating to the
18  transactions in which Canopus' assets were transferred to ADU for inadequate consideration, as
19  well as the corporate structure and ultimate ownership of Aquila/ADU, to establish its links to
20  Kokorich.

21    This discovery will help Ambercroft prove in the Foreign Proceeding, *inter alia*: (i)
22  Kokorich's ownership and/or control of Aquila/ADU; (ii) the inadequacy of consideration
23  involved in the asset transfers at issue between Canopus and Aquila; and (iii) the methods of
24  transfer, use, and ultimate destination of the funds and assets diverted to Aquila (now ADU) as the
25  result of the above-described scheme.

26    As the requested discovery is narrowly limited in time and scope, granting this Application
27  and permitting limited discovery is not unduly intrusive or burdensome. Courts in this district
28  have repeatedly approved discovery consisting of document requests related to transactions

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118343.1
230322-10001

1 conducted by nonparties. *See, e.g., In re: Application of Joint Stock Company Raiffeisenbank*,
2 2016 WL 6474224, at \*7 (N.D. Cal. Nov. 2, 2016) (permitting discovery of "all documents
3 evidencing **ownership structure**, corporate governance, accounting practices, financial
4 statements, tax returns, bank records, **assets**, and **intercompany transactions**" of the nonparty
5 over a discrete period of time) (emphasis added).

6      Moreover, Ambercroft must be able to depose both Mr. Begishev and the person most
7 knowledgeable at ADU. Mr. Begishev was the Chief Financial Officer at Canopus at the time its
8 assets and intellectual property were transferred to Aquila, and was also the Chief Financial
9 Officer at Aquila (and now ADU). Further, Mr. Begishev was appointed to his position at
10 Canopus by Mr. Kokorich, and reported to Mr. Kokorich during the pertinent period. The Foreign
11 Proceeding may, thus, turn on Respondents' testimony regarding the challenged asset transfers, as
12 well as the ultimate ownership of Aquila/ADU.[3]

13      Courts in this circuit have routinely permitted this type of discovery (i.e., depositions)
14 under Section 1782. *See, e.g., In re Ex Parte Application of Mentor Graphics Corp.*, 2017 WL
15 55875, at \*3 (N.D. Cal. Jan. 4, 2017) (permitting deposition in order to determine the timing of a
16 deponent's knowledge of an alleged patent infringement); *Knaggs v. Yahoo! Inc.*, 2016 WL
17 3916350, at \*7 (N.D. Cal. Jul. 20, 2016) (noting that a deposition "could help [applicant] gain a
18 better understanding of [the witness's] system"); *Siemens AG v. Western Digital Corp.*, 2013 WL
19 5947973, at \*5 (C.D. Cal. Nov. 4, 2013) (approving of deposition under section 1782).

20      Other courts have likewise recognized that "a single deposition" of a nonparty is not
21 unduly burdensome. *In re Application of 000 Promnefstroy for an Order to Conduct Discovery for*
22 *Use in a Foreign Proceeding*, 134 F. Supp. 3d 789, 794 (S.D.N.Y. 2015); *see also In re Letters*
23 *Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1220 (9th Cir. 1976) (although "the
24 requirement that the witnesses attend depositions may be an imposition," it was outweighed by the
25 necessity of the discovery); *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v.*
26

27 [3]    Note, to the extent ADU lists Mr. Begishev as its person most knowledgeable under Rule
28 30(b)(6) of the Federal Rules of Civil Procedure, Mr. Begishev could be deposed just once, both in his individual capacity and on behalf of ADU.

13

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118343.1
230322-10001

MEMORANDUM OF LAW IN SUPPORT OF EX PARTE
APPLICATION OF AMBERCROFT TRADING LIMITED

1  *JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1272-73 (11th Cir. 2014) (affirming section 1782

2  application which sought document production and deposition testimony); *Republic of Ecuador v.*

3  *Bjorkman*, 801 F. Supp. 2d 1121, 1126 (D. Colo. 2011) (same).

4  Accordingly, this *Intel* factor also weighs in favor of granting the Application.

5  **IV.   CONCLUSION**

6  Ambercroft seeks narrowly tailored discovery for use in the contemplated Foreign

7  Proceeding. Because Ambercroft's Application satisfies the statutory requirements of 28 U.S.C.

8  § 1782, and because the *Intel* discretionary factors all weigh in favor of granting the Application,

9  Ambercroft respectfully requests that the Court grant this Application for an Order authorizing the

10  requested subpoenas.

11

12  Dated: April 25, 2018                    LOEB & LOEB LLP
                                             OLEG STOLYAR
13                                           JENNIFER JASON

14                                           By_____/s/ Oleg Stolyar_____
                                                         Oleg Stolyar
15                                           Attorneys for Applicant
                                             AMBERCROFT TRADING LIMITED
16

17

18

19

20

21

22

23

24

25

26

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

16118343.1
230322-10001

MEMORANDUM OF LAW IN SUPPORT OF EX PARTE
APPLICATION OF AMBERCROFT TRADING LIMITED