UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE EX PARTE APPLICATION OF
AMBERCROFT TRADING LIMITED

Case No. 18-mc-80074-KAW

**ORDER GRANTING EX PARTE APPLICATION FOR AN ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDING**

Re: Dkt. No. 1

On April 27, 2018, Petitioner Ambercroft Trading Limited filed an ex parte application for an order to obtain discovery for use in a foreign proceeding, pursuant to 28 U.S.C. § 1782(a). (Dkt. No. 1.) Petitioners seek discovery from Astro Digital US, Inc. ("Astro Digital") and Damir Begishev, who reside in this district. (*Id.* at 2.) Upon consideration of the motion, the Court GRANTS Petitioner's request.[1]

## I. BACKGROUND

Petitioner is a minority shareholder in Dauria Holding International Limited ("DHIL"), a company organized and registered under the laws of the British Virgin Islands. (Clifton Decl. ¶ 9.) DHIL, in turn, was the majority shareholder in Dauria Aerospace Holding Limited ("DASH"), a company incorporated under the laws of the Republic of Cyprus. (Clifton Decl. ¶¶ 6-7.) DASH is a holding company that develops and manufactures satellites through its subsidiaries; one of its subsidiaries, Canopus, owned DASH's Perseus-M satellites. (Clifton Decl. ¶ 6.)

---

[1] On June 1, 2018, Mr. Mikhail Kokorich filed a letter requesting that the Court refrain from ruling on the instant application to allow Mr. Kokorich to file a motion to intervene and motion to quash. The Court does not find good cause to delay ruling on the instant application. A motion to quash challenging the discovery after it is authorized may be filed by any party having standing to do so. As such, Mr. Kokorich's request for a stay to allow him to file a motion to quash at this juncture is premature.

Mr. Mikhail Kokorich had a controlling interest in DHIL, and served as the CEO of DASH starting in June 2014 through the relevant time period. (Clifton Decl. ¶ 8.) Mr. Kokorich was also responsible for the day-to-day operations of Canopus and DASH's other American subsidiaries.

Petitioner asserts that Mr. Kokorich abused his control of DHIL and DASH to transfer assets from Canopus to Aquila, an unrelated company owned and/or controlled by Mr. Kokorich. (Clifton Decl. ¶ 10; Dkt. No. 2 at 4.) Specifically, on May 29, 2014, Mr. Dmitri Kushaev was terminated as managing director in charge of finance strategy and mergers and acquisitions for DASH and its subsidiaries, after Mr. Kushaev questioned financial improprieties. (Clifton Decl. ¶ 11.) Around the same time, Mr. Kokorich also fired CFO Dmitry Sokolsky and Group Treasurer and Controller Maria Pershina. (Clifton Decl. ¶ 12.) Mr. Sokolsky and Ms. Pershina were terminated after they requested documentation and explanations for the expenditures previously questioned by Mr. Kushaev.

Between March and April 2015, Canopus entered into agreements to transfer two Perseus-M satellites to Aquila, a company formed by Mr. Kokorich a few months prior. (Clifton Decl. ¶¶ 13-15.) The Perseus-M satellites were worth over $5 million, but DASH only received around $2 million. (Clifton Decl. ¶ 15.) After the transfer of the satellites, Mr. Kokorich and Aquila began to compete with DASH, and employees and management from Canopus moved over to Aquila. (Clifton Decl. ¶ 18; Dkt. No. 2 at 5.) Mr. Kokorich also advertised Aquila (now known as Astro Digital) as being the operator of two Perseus-M satellites, and entered into agreements with companies with which DASH had previously been negotiating. (Clifton Decl. ¶ 19.) Aqulia/Astro Digital also secured funds from sources that could otherwise have invested in DASH, obtaining over $10 million from investors between 2016 and early 2017. These events occurred while Mr. Kokorich was still DASH's CEO. (Clifton Decl. ¶ 19.)

To ratify the sale of the satellites, Mr. Kokorich convened a procedurally improper meeting of the DHIL shareholders. (Clifton Decl. ¶ 20.) Per the articles of incorporation, DHIL has authority to appoint DASH's board of directors, although such decisions require the approval of 90% of the shares with the right to vote. (Clifton Decl. ¶ 21.) On August 4, 2015, however, Mr. Kokorich convened a meeting of the DHIL members for August 10, 2015, for the purpose of

changing DASH's board of directors. Petitioner asserts that inadequate notice was given to Petitioner and other DHIL members. (Clifton Decl. ¶ 21.) Mr. Kokorich was advised that the notice for the August 10, 2015 meeting was improper, and that the director appointed by and representing Petitioner (Mr. Kushaev) could not attend. (Clifton Decl. ¶ 22.) Nevertheless, Mr. Kokorich convened the shareholder meeting and made changes to DASH's board of directors, with the approval of less than 90% of the DHIL shares with the right to vote. (Clifton Decl. ¶¶ 22-23.)

On October 29, 2015, Petitioner sent Mr. Kokorich, DHIL, and DASH (collectively, "proposed Defendants") a demand letter, requiring that they remedy Mr. Kokorich's actions. (Clifton Decl. ¶ 24.) The subsequent negotiations were unsuccessful. On December 7, 2017, Petitioner sent another demand letter, stating that it intended to file a legal action in the British Virgin Islands if its issues were not resolved. (Clifton Decl. ¶ 25, Exh. 5.) In January 2018, the proposed Defendants responded that they had retained legal counsel to represent them in the contemplated legal proceeding and rejected Petitioner's settlement proposal. (Clifton Decl. ¶ 26.) In light of this response, Petitioner intends to file a foreign proceeding against the proposed Defendants in the "near future." (Clifton Decl. ¶ 27.)

On April 27, 2018, Petitioner filed the instant ex parte motion for discovery under 28 U.S.C. § 1782. Petitioner seeks discovery from Astro Digital, as well as Mr. Damir Begishev, who was the CFO at Canopus at the time of the asset transfers to Aquila and was also the CFO at Aquila/Astro Digital. (Dkt. No. 2 at 13.)

## II. LEGAL STANDARD

28 U.S.C. § 1782 "is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced micro Devices, Inc.*, 542 U.S. 241, 247 (2004). In relevant part, § 1782(a) states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

Thus, discovery under § 1782(a) is permitted where the following three requirements are met: "(1) the discovery sought is from a person residing in the district of the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an interested person." *In re Ex Parte Apple Inc.*, Case No. 12-mc-80013-JW, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012).

Even if these three factors are met, the court is not required to grant the application. *In re Ex Parte Apple Inc.*, 2012 WL 1570043, at *1; *see also In re Application of Joint Stock Co. Raiffeinsenbank ("In re Raiffeinsenbank")*, Case No. 16-mc-80203-MEJ, 2016 WL 6474224, at *3 (N.D. Cal. Nov. 2, 2016). Instead, the court considers the following non-exhaustive factors:

> (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the discovery request is an "attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery requested is "unduly intrusive or burdensome."

*In re Ex Parte Apple Inc.*, 2012 WL 1570043, at *1 (quoting *Intel Corp.*, 542 U.S. at 264-65.) The court must exercise its "discretion with the 'twin aims' of § 1782 in mind: (1) 'providing efficient assistance to participants in international litigation' and (2) 'encouraging foreign countries by example to provide similar assistance to our courts.'" *In re Raiffeinsenbank*, 2016 WL 6474224, at *3 (quoting *Intel Corp.*, 542 U.S. at 252).

### III. DISCUSSION

#### A. Ex Parte Application

As an initial matter, the Court notes that "[i]n general, *ex parte* requests are disfavored and mostly limited to emergency situations because such requests disrupt and undermine the adversarial system on which the Court generally operates." *In re: Ex Parte Application Varian Med. Sys. Int'l AG ("In re Varian")*, Case No. 16-mc-80048-MEJ, 2016 WL 1161568, at *2 (N.D. Cal. Mar. 24, 2016). Section 1782 petitions, however, have "regularly [been] reviewed on an *ex parte* basis." *Id.*; *see also In re Raiffeinsenbank*, 2016 WL 6474224, at *3; *In re the Republic of Ecuador*, Case No. 10-mc-80225-CRB (EMC), 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15,

4

1  2010). "'Such ex pate applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.'" *In re the Republic of Ecuador*, 2010 WL 3702427, at *2 (quoting *In re Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976)). Thus, "orders granting § 1782 applications typically only provide that discovery is 'authorized,' and thus the opposing party may still raise objections and exercise its due process rights by challenging the discovery after it is issued via a motion to quash, which mitigates concerns regarding any unfairness of granting the application *ex parte*." *In re Varian*, 2016 WL 1161568, at *2; *see also IPCom GmbH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014).

### B.  42 U.S.C. § 1782 Threshold Requirements

The Court finds that Petitioner satisfies § 1782's threshold requirements. First, the discovery is sought from residents in this district. Specifically, Astro Digital's statement of information, as filed with the California Secretary of State, lists its principal executive office as being in Moffett Field, California, while Mr. Begishev resides in Mountain View, California. (Stolyar Decl., Exh. 3.)

Second, Petitioner seeks the discovery for use in a contemplated foreign proceeding in the British Virgin Islands. (Clifton Decl. ¶¶ 27, 30.) While Petitioner has not yet filed suit, the Supreme Court has explained that "Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings," or even imminent proceedings. *Intel Corp.*, 542 U.S. at 258, 259. Instead, the proceeding must simply "be within reasonable contemplation." *Id.* at 259. This requirement is satisfied on a showing that the proceeding is not merely speculative; at a minimum, the contemplated proceeding must be "more than just a twinkle in counsel's eye." *Certain Funds, Accounts And/Or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC v. KPMG, LLP*, 798 F.3d 113, 124 (2d Cir. 2015). Here, Petitioner sent one demand letter, followed by negotiations with the proposed Defendants. After negotiations failed, Petitioner sent a second demand letter, stating that it intended to file legal action in the British Virgin Islands. This letter outlined what relief Petitioners believed it was entitled to before the Commercial Division of the

High Court of the British Virgin Island, including its legal theories and relevant statutory authority. (Clifton Decl., Exh. 5 at 4-5.) The proposed Defendants responded by stating they had retained legal counsel to represent them in the contemplated proceedings. Petitioner also states that it intends to file suit in the near future. (Clifton Decl. ¶ 27.) The Court finds that these facts are sufficient to show that the contemplated foreign proceeding is not merely speculative. *Compare with LEG Q LLC v. RSR Corp.*, No. 3:17-cv-1559-N-BN, 2017 WL 3780213, at *6 (N.D. Tex. Aug. 31, 2017) (finding second requirement satisfied where the petitioner had served a letter before action on the intended defendants, was in the midst of the pre-action correspondence process that typically preceded the filing of a shareholder derivative action, and stated that it intended to commence the action after obtaining the requested discovery); *Bravo Express Corp. v. Total Petrochemicals & Refining U.S.*, 613 Fed. Appx. 319, 323 (5th Cir. 2015) (finding second requirement satisfied where the petitioner's counsel provided a sworn affidavit stating that the action would be "imminently filed," explained the facts giving rise to the suit, and stated that the petitioner had already prepared its "claim of particulars").

Finally, Petitioner is an "interested person" because it would be the plaintiff in the contemplated foreign proceedings.

Because all three requirements are satisfied, the Court may authorize discovery under § 1782.

### C. Discretionary Factors

The Court finds that the four discretionary factors support authorizing discovery under § 1782. The first factor considers whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel Corp.*, 542 U.S. at 264. When the person from whom discovery sought is a participant, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because the foreign tribunal would have jurisdiction over participants, and could order discovery. *Id.* "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid. *Id.* Here, Petitioner asserts that Astro Digital and Mr. Begishev will not be

parties or participants in the contemplated foreign proceeding. (Clifton Decl. ¶ 31.) Thus, this factor weighs in favor of § 1782 discovery.

The second factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign . . . court . . . to U.S. federal-court judicial assistance." *Intel Corp.*, 542 U.S. at 264. "This factor considers whether the foreign tribunal is willing to consider the information sought." *In re Raiffeinsenbank*, 2016 WL 6474224, at *5 (internal quotation omitted). In reviewing this factor, the district court looks at whether "there is reliable evidence that the foreign tribunal would not make any use of the requested material," in which case "it may be irresponsible for the district court to order discovery, especially where it involves substantial costs to the parties involved." *In re Varian*, 2016 WL 1161568, at *4 (internal quotation omitted). Here, Petitioner's counsel, who is admitted to practice law in the British Virgin Islands, states that he is "not aware of any reason a [British Virgin Islands] court would not accept judicial assistance from a U.S. court," and that British Virgin Islands "law does not prohibit a party from seeking evidence abroad by whatever legal means are available to it." (Clifton Decl. ¶ 29.) Other courts have found similarly. *In re Application of Bracha Found. Request for Discovery Pursuant to 28 U.S.C. § 1782*, Case No.: 2:15-mc-748-KOB, 2015 WL 6123204, at *4 (N.D. Ala. Oct. 19, 2015) ("this court has no reason to believe that the [British Virgin Islands] tribunal would not be receptive to judicial assistance by U.S. federal courts"), *affirmed in relevant part by In re: Application of Bracha Found.*, 663 Fed. Appx. 755, 765 (11th Cir. 2016) ("we discern no abuse in the district court's decision to permit discovery based on the *Intel* discretionary factors"). *In re Hornbeam Corp.*, -- Fed. Appx. --, 2018 WL 416486, at *2 (2d Cir. Jan. 16, 2018) (affirming the district court's finding that the second factor favored § 1782 discovery as to proceedings contemplated in the British Virgin Islands). This factor weighs in favor of authorizing § 1782 discovery.

The third factor looks at "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States." *Intel Corp.*, 542 U.S. at 265. "Although courts need not determine if an applicant has exhausted its discovery attempts abroad, a perception that an applicant has side-stepped less-than-favorable

7

discovery rules by resorting immediately to §1782 can be a factor in a court's analysis." *In re Raiffeinsenbank*, 2016 WL 6474224, at *6 (internal quotation omitted). Here, the Court has no reason to believe that the instant application is an attempt to circumvent foreign proof-gathering restrictions or policies of the British Virgin Islands. Again, Petitioner's counsel avers that he is not aware of any reason that "seeking documentary evidence in the U.S. via a subpoena would circumvent any BVI proof-gathering restrictions or policies." (Clifton Decl. ¶ 29.) This factor also weighs in favor of authorizing § 1782 discovery.

Finally, the fourth factor reviews whether the requested discovery is "unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 265. "The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure." *In re Raiffeinsenbank*, 2016 WL 6474224, at *6.

Here, Petitioner "seeks to obtain documents and testimony relating to the transactions in which Canopus'[s] assets were transferred to [Astro Digital] for inadequate consideration, as well as the corporate structure and ultimate ownership of Aquila/[Astro Digital], to establish its links to Kokorich." (Dkt. No. 2 at 12.) Petitioner asserts that this information will help establish: "(i) Mr. Kokorich's ownership and/or control of Aquila/[Astro Digital]; (ii) the lack of any legitimate business purpose for the asset transfers at issue between Canopus and Aquila; and (iii) the methods of transfer, use, and ultimate destination of the funds and assets diverted to Aquila (now [Astro Digital]) as the result of the above-described fraudulent scheme." (Clifton Decl. ¶ 30.) The Court agrees that the discovery appears to seek information that is relevant to the contemplated proceeding. The discovery seeks information related to the formation of Aquila and its transition to Astro Digital; the shareholders, beneficiaries, officers, and employees; agreements between Canopus and Aquila; correspondence between Aquila/Astro Digital and the proposed Defendants; bank statements, financial statements, and tax returns from Aquila's incorporation to the present, and agreements between Aquila/Astro Digital and former Canopus customers. (Dkt. No. 1, Exh. A.)

Further, if Astro Digital or Mr. Begishev seeks to challenge the relevance, breadth, or burdensomeness of Petitioner's discovery requests, this order does not preclude them from

bringing a motion to quash or modify the discovery sought. *See In re Raiffeinsenbank*, 2016 WL 6474224, at *7; *In re Republic of Ecuador*, 2010 WL 3702427, at *5 ("the Court's ruling here does not preclude Mr. Borja . . . from contesting the subpoena based on undue intrusion or burden or based on other grounds (*e.g.*, overbreadth)"). Therefore, this factor, along with the other discretionary factors, favors authorizing § 1782 discovery.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Petitioner has met § 1782's three requirements, and that the discretionary factors weigh in favor of granting Petitioner's application. Accordingly, Petitioner's application is GRANTED, and Petitioner may serve the subpoenas on Astro Digital and Mr. Begishev. Again, this order does not preclude Astro Digital and Mr. Begishev from filing a motion to quash or any other relevant discovery motion.

IT IS SO ORDERED.

Dated: June 11, 2018

_____
KANDIS A. WESTMORE
United States Magistrate Judge