UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF AMBERCROFT TRADING LIMITED | Case No. 18-mc-80074-KAW<br><br>**ORDER GRANTING MOTION TO INTERVENE; DENYING MOTION TO QUASH**<br><br>Re: Dkt. No. 10 |

On April 27, 2018, Petitioner Ambercroft Trading Limited filed an ex parte application for an order to obtain discovery for use in a foreign proceeding, pursuant to 28 U.S.C. § 1782(a). (Dkt. No. 1.) Petitioners sought discovery from Astro Digital US, Inc. ("Astro Digital") and Damir Begishev, who reside in this district. (*Id.* at 2.) On June 11, 2018, the Court granted Petitioner's ex parte application. (Ord., Dkt. No. 9.) On June 27, 2018, Mikhail Kokorich filed the instant motion to intervene and to quash the subpoena. (Kokorich Mot., Dkt. No. 10.)

The Court deems the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b), and VACATES the October 4, 2018 hearing. Having considered the papers filed by the parties and the relevant legal authority, the Court GRANTS the motion to intervene and DENIES the motion to quash.

## I. BACKGROUND

Petitioner is a minority shareholder in Dauria Holdings International Limited ("DHIL"), a holding company organized and registered under the laws of the British Virgin Islands ("BVI"). (Clifton Decl. ¶¶ 7, 9, Dkt. No. 3.) DHIL's only asset is its interest in Dauria Aerospace Holding Ltd. ("DASH"), a company incorporated under the laws of the Republic of Cyprus. (Clifton Decl. ¶¶ 6-7, Kokorich Mot. at 4.) Specifically, DHIL owned all of DASH's Class-A shares, while a

separate company, I2BF, owned all of DASH's Class-B shares. (Kokorich Mot. at 4.)

DASH is a holding company that develops and manufactures satellites through its subsidiaries. (Clifton Decl. ¶ 6.) DASH's U.S. subsidiary owned a 100% interest in Dauria Geo Inc. ("Dauria"), a Delaware corporation, which in turn owned 100% of Canopus Systems US LLC ("Canopus"). (Kokorich Mot. at 4.) Canopus owned two Perseus-M satellites. (Clifton Decl. ¶ 6; Kokorich Mot. at 6.) Mr. Kokorich had a controlling interest in DHIL through a separate company, served as the CEO of DASH starting in June 2014 through the relevant time period, and was responsible for the day-to-day operations of Canopus and DASH's U.S. subsidiaries. (Kushaev Decl. ¶¶ 2, 9, Dkt. No. 23.)

Petitioner asserts that Mr. Kokorich abused his control of DHIL and DASH to transfer assets from Canopus to Aquila -- now known as Astro Digital -- an unrelated company owned and/or controlled by Mr. Kokorich.[1] (Clifton Decl. ¶ 10; Kushaev Decl. ¶ 10.) Specifically, Petitioner states that Mr. Kushaev, DASH's managing director in charge of finance strategy, was terminated after questioning various financial improprieties. (Clifton Decl. ¶ 11.) Petitioner also alleges that Mr. Kokorich fired DASH's CFO and the group treasurer and controller after they requested documentation and explanations for the same expenditures questioned by Mr. Kushaev. (Clifton Decl. ¶ 12.)

Between March and April 2015, Canopus entered into agreements to transfer the Perseus-M satellites to Aquila.[2] (Clifton Decl. ¶¶ 13-15.) Although the satellites were worth over $5 million, DASH only received $2 million for the transfer. (Clifton Decl. ¶ 15.) Mr. Kokorich and Aqualia then allegedly began to compete with DASH, and employees and management from Canopus moved over to Aquila (now known as Astro Digital). (Clifton Decl. ¶ 18.)

---

[1] Mr. Kokorich disputes that the transfer of assets was fraudulent, asserting that the transfers were necessary to prevent a separate sub-subsidiary of DASH from breaching a contract with the Russian space agency. (Kokorich Mot. at 4, 6.) Mr. Kokorich contends that the breach put the sub-subsidiary at risk of severe fines that, in turn, could have caused DASH's bankruptcy. (*Id.* at 6.)

[2] Mr. Kokorich asserts that the March/April 2015 agreements were nullified by an August 11, 2015 agreement between DASH, Canopus, and Aquila. (Kokorich Mot. at 7.) In either case, the satellites were ultimately transferred from Canopus to Astro Digital.

To ratify the sale of the satellites, Mr. Kokorich convened an August 10, 2015 meeting of the DHIL shareholders. (Clifton Decl. ¶ 20.) Petitioner alleges that Mr. Kokorich convened the August 10, 2015 meeting to change DASH's board of directors, and the parties dispute whether the meeting was properly noticed or if the change was made with the approval of the required 90% of the DHIL shares with the right to vote. (Clifton Decl. ¶¶ 21-23; Kokorich Mot. at 8.)

On October 29, 2015, Petitioner sent Mr. Kokorich, DHIL, and DASH (collectively, "proposed Defendants") a demand letter, requiring that they remedy Mr. Kokorich's actions. (Clifton Decl. ¶ 24.) The parties then engaged in protracted negotiations, which were ultimately unsuccessful. (*Id.*) On December 7, 2017, Petitioner sent another demand letter, stating that it intended to file a legal action against the proposed Defendants in the BVI court if its issues were not resolved. (Clifton Decl. ¶ 25.)

In January 2018, the proposed Defendants responded that they had retained legal counsel to represent them in the contemplated legal proceeding and rejected Petitioner's claims and settlement proposal. (Clifton Decl. ¶ 26; Kushaev Decl. ¶ 33.) The parties then engaged in settlement negotiations but failed to resolve the claims. (Kushaev Decl. ¶ 34.) After these negotiations failed, Petitioner stated its intent "to file a BVI proceeding against the putative Defendants in the near future." (Kushaev Decl. ¶ 35.)

On April 27, 2018, Petitioner filed an ex parte application for an order to obtain discovery for use in a foreign proceeding, pursuant to § 1782. (Dkt. No. 1.) On June 1, 2018, Mr. Kokorich filed a letter stating that he intended to file a motion to intervene and quash, and requesting that the Court refrain from ruling on the § 1782 application. (Dkt. No. 8.) On June 11, 2018, the Court granted Petitioner's § 1782 application. The Court acknowledged Mr. Kokorich's letter, but explained that there was no good cause to delay ruling on the § 1782 application. (Order at 1 n.1.) The Court noted that a motion to quash could be filed after the discovery was authorized. (*Id.*)

On June 27, 2018, Mr. Kokorich filed the instant motion to intervene and quash. On August 1, 2018, Petitioner filed its opposition to the motion. (Pet.'s Opp'n, Dkt. No. 20.) On September 10, 2018, Mr. Kokorich filed his reply. (Kokorich Reply, Dkt. No. 26.) Mr. Kokorich also filed a request for judicial notice in support of his reply. (Kokorich RJN, Dkt. No. 30.)

## II. LEGAL STANDARD

### A. Request for Judicial Notice

A district court may take judicial notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). A court may, therefore, take judicial notice of matters of public record. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

### B. 28 U.S.C. § 1782

28 U.S.C. § 1782 "is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). In relevant part, § 1782(a) states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

Thus, discovery under § 1782(a) is permitted where the following three requirements are met: "(1) the discovery sought is from a person residing in the district of the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an interested person." *In re Ex Parte Apple Inc.*, Case No. 12-mc-80013-JW, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012).

Even if these three factors are met, the court is not required to grant the application. *In re Ex Parte Apple Inc.*, 2012 WL 1570043, at *1; *see also In re Application of Joint Stock Co. Raiffeinsenbank ("In re Raiffeinsenbank")*, Case No. 16-mc-80203-MEJ, 2016 WL 6474224, at *3 (N.D. Cal. Nov. 2, 2016). Instead, the court considers the following non-exhaustive factors:

> (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the discovery request is an "attempt to circumvent proof-gathering restrictions or

4

> other policies of a foreign country or the United States"; and (4) whether the discovery requested is "unduly intrusive or burdensome."

*In re Ex Parte Apple Inc.*, 2012 WL 1570043, at *1 (quoting *Intel Corp.*, 542 U.S. at 264-65.) The court must exercise its "discretion with the 'twin aims' of § 1782 in mind: (1) 'providing efficient assistance to participants in international litigation' and (2) 'encouraging foreign countries by example to provide similar assistance to our courts.'" *In re Raiffeinsenbank*, 2016 WL 6474224, at *3 (quoting *Intel Corp.*, 542 U.S. at 252).

### III. DISCUSSION

#### A. Request for Judicial Notice

Mr. Kokorich requests that the Court take judicial notice of: (1) Canopus's Articles of Organization, filed with the California Secretary of State, and (2) Canopus's Statement of Information, filed with the California Secretary of State. (Kokorich RJN at 1.) Petitioner did not file any objections.

Courts have found that "California Secretary of State filings are appropriate for judicial notice, as they are matters of public record . . . ." *L.A. Gem & Jewelry Design, Inc. v. Ecommerce Innovations, LLC*, CV 16-9325-RSWL-KSx, 2017 WL 1535084, at *3 (C.D. Cal. Apr. 27, 2017); *see also Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*, 212 F. Supp. 3d 816, 823 (N.D. Cal. 2016). Therefore, the Court will take judicial notice of both exhibits.

#### B. Motion to Intervene

The Court finds that Mr. Kokorich has standing to intervene in this action and move to quash the subpoenas. "[I]t is well-settled that a party against whom the requested information will be used has standing to challenge the issuance of § 1782 subpoenas under the Rules of Civil Procedure and under the statute itself." *In re Rivada Networks*, 230 F. Supp. 3d 467, 472 (E.D. Va. 2017) (internal quotation and modifications omitted); *see also In re Letter of Request from Crown Prosecution Serv. of U.K.*, 870 F.2d 686, 689 (D.C. Cir. 1989) ("The precedent in point is uniform and we adhere to it. A person situated as . . . one against whom information obtained under section 1782 may be used, has standing to assert that, to his detriment, the authority for which the section provides is being abused."). Further, per Federal Rule of Civil Procedure 24(b),

the Court may grant permissive intervention where "the party seeking to intervene has filed a timely motion and 'has a claim or defense that shares with the main action a common question of law or fact.'" *In re Rivada Networks*, 230 F. Supp. 3d at 472 (quoting Fed. R. Civ. P. 24(b)). Here, the motion to intervene was timely because it was filed sixteen days after the Court issued its order on Petitioner's § 1782 application, and Mr. Kokorich's conduct is at the center of Petitioner's potential lawsuit. *Compare with id.*

Petitioner does not dispute this authority. Instead, Petitioner argues that according to Mr. Kokorich, Petitioner will find "nothing implicating Kokorich and thus nothing will exist to be used in future litigation against Kokorich." (Pet.'s Opp'n at 11.) Mr. Kokorich's assertion that he did not act improperly does not change the fact that Petitioner is seeking evidence that will be used against Mr. Kokorich. The Court therefore GRANTS Mr. Kokorich's motion to intervene.

## C. 28 U.S.C. § 1782

### i. Threshold Requirements

Mr. Kokorich argues that Petitioner has not established § 1782's threshold requirements, specifically that there are no "contemplated proceedings" and that Petitioner is not an "interested person." (Kokorich Mot. at 11, 15.)[3]

#### a. Contemplated Proceedings

In general, "[s]ection 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings," or even imminent proceedings. *Intel Corp.*, 542 U.S. at 258, 259. Instead, the proceeding must simply "be within reasonable contemplation." *Id.* at 259. This requirement is satisfied by showing that the proceeding is not speculative, and is "more than just a twinkle in counsel's eye." *Certain Funds, Accounts And/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC v. KPMG, LLP*, 798 F.3d 113, 124 (2d Cir. 2015). Courts in this circuit have found that the proceeding need not even be imminent to satisfy this requirement. *In re*

---

[3] In the reply, Mr. Kokorich also argues that the discovery obtained will not be used in the contemplated foreign proceedings. (Kokorich Reply at 6-7.) By raising this argument for the first time in his reply, Mr. Kokorich has waived the argument. *Estate of Saunders v. C.I.R.*, 745 F.3d 953, 962 n.8 (9th Cir. 2014) ("Arguments raised . . . only on reply[] are generally deemed waived."). In any case, the substantive arguments are similar to those raised with respect to the other threshold requirements that Mr. Kokorich challenges.

6

*Application of Ontario Principals' Council*, No. MC-14-00050-PHX-SPL, 2014 WL 3845082, at *2 (D. Ariz. Aug. 1, 2014).

First, Mr. Kokorich argues there can be no contemplated proceedings because the discovery Petitioner seeks is relevant only to the transfer of assets, but that this transfer was done by DASH, not DHIL. (Kokorich Mot. at 11.) Mr. Kokorich further contends that Petitioner would not be able to bring a claim directly against DASH.[4]

Ultimately, this is a merits-based argument, whereas the "contemplated proceedings" requirement is solely a matter of timing. Mr. Kokorich cites to no case in which the court considered the merits of the planned foreign action in determining whether the proceedings are "contemplated." To the extent Mr. Kokorich relies on *In re Hoteles City Express*, this case does not stand for the proposition that merits are considered in determining whether there are "contemplated proceedings." (Kokorich Reply at 3.) There, the petitioner sought discovery of subscriber information identifying the owner of a Facebook page that an allegedly defamatory video was posted on. Case No. 18-mc-80112-JSC, 2018 WL 3417551, at *1 (N.D. Cal. July 13, 2018). The district court found that the application satisfied § 1782's threshold requirements, including that there were contemplated proceedings, *i.e.*, a planned defamation suit. *Id.* at *2. The district court, however, denied the application because the petitioner was seeking discovery of the identity of an unknown person. *Id.* at *3. In that specific circumstance of "learn[ing] the identity of an unknown party through early discovery, courts examine whether," among other things, "the plaintiff's suit against [the] defendant could withstand a motion to dismiss." *Id.* (internal quotation omitted). Because the petitioner had not provided any information on whether it could state a claim for defamation, the district court denied the application.

---

[4] In support of this argument, Mr. Kokorich in a footnote invites the Court to review the entirety of the Davis declaration, an 11-page declaration with approximately 90 pages of exhibits. (Kokorich Mot. at 11 n.7.) The Court declines. First, "[a]rguments raised only in footnotes . . . are generally deemed waived." *Estate of Saunders*, 745 F.3d at 962 n.8. Second, it is not the Court's role to scour entire documents to determine which portion the parties believe is relevant to the argument. *Zackaria v. Wal-Mart Stores, Inc.*, Case No. ED CV 12-1520 FMO (SPx), 2014 WL 11398759, at *2 (C.D. Cal. Feb. 21, 2014) ("it is not the court's duty to scour the lists in each of the six pages in search of evidence supporting plaintiff's factual statement. Rather, plaintiff must provide the court with pincites . . . .").

7

Although the *In re Hoteles City Express* court declined to grant the ex parte application because the petitioner had not satisfied the standard for seeking early discovery of the identity of an unknown person, the district court still found that there were contemplated proceedings. 2018 WL 3417551, at *2. This supports the Court's conclusion that whether there are contemplated proceedings is a matter of timing, not whether the petitioner can prevail on the merits of the planned case. Therefore, the Court rejects Mr. Kokorich's argument that there are no contemplated proceedings because Petitioner may not succeed on the merits.

Second, Mr. Kokorich argues that Petitioner's past behavior makes it unlikely that Petitioner will file suit in the "near future." (Kokorich Mot. at 14-15.) Specifically, Mr. Kokorich points to Petitioner's October 2015 demand letter, which was followed by "years of silence" until the December 2017 demand letter. (*Id.* at 14.) After Mr. Kokorich rejected Petitioner's demands in a January 31, 2018 letter, Petitioner still did not file suit. (*Id.*) Mr. Kokorich argues that the instant case is thus comparable to *In re Application of the Government of Lao People's Democratic Republic*, in which the district court denied the § 1782 applications. (Kokorich Reply at 4.) There, the petitioner sought documents related to a criminal bribery investigation, but there was uncertainty as to whether a decision to prosecute had been made. Case 1:15-MC-00018, 2016 WL 1389764, at *7 (D. N. Mar. I. Apr. 7, 2016). The petitioner also knew of the underlying facts for years, but took no prosecutorial actions after an initial investigation. *Id.* at *8. It was not until after a related arbitration was started that the petitioner sought the requested discovery which the district court found suggested that the decision "to restart the investigation it earlier abandoned may have more to do with seeking damaging information for the . . . arbitration than it does with punishing criminal activity." *Id.*

Here, in contrast, this is not a case where Petitioner "abandoned" its prior investigation. Rather, Petitioner explains any delay in filing suit by pointing out that after it sent the October 2015 letter, the parties "engaged in protracted settlement negotiations . . . which proved unsuccessful." (Kushaev Decl. at ¶ 31.) After the December 2017 demand letter, the parties "again engaged in settlement negotiations that again did not result in an agreement." (Kushaev Decl. ¶ 34.) Petitioner then filed its § 1782 application in April 2018. Mr. Kokorich, notably,

8

does not dispute that the parties were engaged in protracted settlement negotiations. Under these circumstances, where the parties were actively seeking a resolution of the matter -- which would abrogate the need to file any lawsuit -- the Court finds that Petitioner's failure to file suit immediately after sending the October 2015 or December 2017 letters does not suggest that Petitioner is unlikely to file suit now.

Finally, Mr. Kokorich contends that Petitioner's claims based on a shareholder agreement are subject to mandatory arbitration. (Kokorich Mot. at 14.) In its reply, Mr. Kokorich also contends that two of Petitioner's six potential causes of action are derivative actions,[5] and therefore dependent on a BVI court giving Petitioner leave to prosecute the case. (Kokorich Reply at 5.) Even assuming that both are true, however, Petitioner still has causes of action that are neither subject to arbitration nor the leave requirement. Thus, Petitioner could still file a case "in the near future," as Petitioner states it will. (Kushaev Decl. ¶ 35.) The Court finds that there is a "contemplated proceeding."

b.  Interested Person

Next, Mr. Kokorich argues that Petitioner is not an interested person because Petitioner lacks standing to pursue the derivative claims, which Mr. Kokorich argues requires that Petitioner first obtain leave. (Kokorich Mot. at 15.) Again, even if that is true, Petitioner still has four causes of action that Petitioner could bring against DHIL. At least one of those claims, an unfair prejudice claim, is based on the complained of transfers. (*Id.* at 12; Pet.'s Opp'n at 16; Nicholson Decl. ¶ 8a, Dkt. No. 22.)

In the alternative, Mr. Kokorich asserts, without explanation, that Petitioner's "direct actions against DHIL in connection with DASH's and Kokorich's actions would be too far-fetched

---

[5] Mr. Kokorich describes six causes of action that Petitioner would bring: (1) breach of the articles of association, (2) unfair prejudice (BVI Business Companies Act § 184I), (3) breach of the DASH shareholder agreement (BVI Business Companies Act § 184C), (4) breach of the director and CEO duties of DASH (BVI Business Companies Act § 184C), (5) injunctive relief (BVI Business Companies Act § 184B), and (6) breach of duty (BVI Business Companies Act § 184G). (Kokorich Mot. at 12-13.) Mr. Kokorich asserts that the third and fourth claims would be derivative actions brought on behalf of DHIL or DASH against certain individuals. (*Id.*) Petitioner does not appear to dispute that these are the six causes of action it would bring, nor that those two claims would be derivative.

9

to construe." (Kokorich Mot. at 15.) The Court need not accept such conclusory statements. Additionally, this is a merits-based argument, and Mr. Kokorich cites to no authority that the Court is to consider such arguments at this juncture. *But see In re Hoteles City Express*, 2018 WL 3417551, at *2 (concluding that the petitioner was an interested party, despite ultimately denying the § 1782 application due to the failure to provide sufficient information to state a defamation claim).

Even if the Court was to consider this merits argument, to the extent Mr. Kokorich is in fact arguing that DHIL cannot be held responsible for the actions of DASH in the complained of transfers, the Court disagrees. Mr. Kokorich argues that the BVI Court of Appeal recently found that the only time the affairs of a subsidiary can be considered is when: (1) the actions concern the affairs of a wholly-owned subsidiary, and (2) the directors of the holding company are also directors of the subsidiary. (Kokorich Reply at 6.) In support, Mr. Kokorich relies upon a BVI Court of Appeal decision which stated: "the affairs of the company . . . **can** include the affairs of a subsidiary . . . where, first, it is the affairs of its wholly-owned subsidiary . . . and, secondly, the directors of the holding company are also directors of the subsidiary." *Claim No. BVIHCMAP2013/0024 Wang Zhongyoung et al. v. Union Zone Mgmt. Ltd.* ¶ 66 (internal quotation omitted and internal emphasis added). As an initial matter, this statement was a quotation from a case summary in *Rackind v. Gross*, an English Court of Appeal decision,[6] which one of the counsel relied upon. The BVI Court of Appeal was describing the counsel's argument and his authority; it is not clear the BVI Court of Appeal necessarily agreed with the statement. More importantly, this language does not state that this is the *only* circumstance in which the affairs of a subsidiary can be considered; instead, it describes one situation in which the conduct of a subsidiary can be attributed to the holding company. Thus, the Court cannot conclude that Petitioner would necessarily be foreclosed from bringing a case against DHIL based on the

---

[6] Notably, Petitioner also relies on *Rackind v. Gross*, which states that "the words 'affairs of the company' are extremely wide and should be construed liberally," such that "the conduct of the 'affairs' of a parent company includes . . . condoning by inaction an act of a subsidiary, particularly when the directors of the parent and subsidiary are the same." (Nicholson Decl. ¶ 18, Dkt. No. 22.)

10

allegedly fraudulent transfers permitted by its subsidiary and Mr. Kokorich.

Therefore, the Court finds that Petitioner still satisfies the interested person prong.

### ii. Discretionary *Intel* Factors

  a. Participant in Foreign Proceeding

The first *Intel* factor considers whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel Corp.*, 542 U.S. at 264. Mr. Kokorich argues that although the discovery is sought from a non-party, it ultimately concerns Mr. Kokorich, who will be a defendant in the planned proceeding. (Kokorich Mot. at 16.) He relies on *In re Cathode Ray Tube (CRT) Antitrust Litigation*, in which the district court found that although the discovery was sought from a non-party, the discovery concerned defendants in an ongoing foreign litigation where the petitioner was the plaintiff. Case No. 07-cv-5944-SC, 2013 WL 183944, at *2 (N.D. Cal. Jan. 17, 2013). Thus, the petitioner had discovery options available to it in Korea, where the ongoing foreign litigation was taking place. *Id.*

The Court finds the instant case distinguishable because Mr. Kokorich is *not* currently a participant in a foreign proceeding. Thus, whereas in *In re CRT Antitrust Litigation*, the petitioner there could have obtained the discovery in the ongoing foreign proceeding, Petitioner here does not have any other discovery option because there is no ongoing foreign proceeding. Notably, every case relied upon by Mr. Kokorich involved situations where the petitioner was seeking discovery about a participant in an ongoing case, which again, meant that the petitioner could have obtained the discovery directly from that participant through those pending matters. *See Heraeus Kulzer GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) (denial of a § 1782 application could be warranted where it would force an "opponent to proceed in **two** separate court systems") (emphasis added); *In re Macquarie Bank Ltd.*, No. 2:14-cv-797-GMN-NJK, 2015 WL 3439103, at *7 (D. Nev. May 28, 2015) ("Juno is a party to the on-going Dutch proceedings and its documents are within the jurisdictional reach of the District Court of Amsterdam"); *MetaLab Design Ltd. v. Zozi Int'l, Inc.*, Case No. 17-mc-80153-MEJ, 2018 WL 368766, at *3 (N.D. Cal. Jan. 11, 2018) ("it appears MetaLab can obtain the discovery from a participant in the Canadian Action"). It was therefore unnecessary to seek discovery through § 1782. Again, that is not the case here. The

11

Court therefore finds that this factor still weighs in favor of granting the § 1782 application.

        b. Circumventing Foreign Proof-Gathering Restrictions

  The second *Intel* factor concerns "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign . . . court to U.S. federal-court judicial assistance," whereas the third *Intel* factor looks at "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264, 265. Mr. Kokorich analyzes both factors together, to argue generally that Petitioner is seeking to circumvent BVI rules and law. (Kokorich Mot. at 16-18.)

  As an initial matter, Mr. Kokorich challenges Petitioner's citation to an Alabama case in the original petition, in which the district court found that there was "no reason to believe that the BVI tribunal would not be receptive to judicial assistance by U.S. federal courts." *In re Application of Bracha Found. Request for Discovery Pursuant to 28 U.S.C. § 1782*, Case No.: 2:15-mc-748-KOB, 2015 WL 6123204, at *4 (N.D. Ala. Oct. 19, 2015). Mr. Kokorich complains that although this decision was upheld by the Eleventh Circuit, the parties had not challenged this finding. (Kokorich Mot. at 17.) In finding that the second factor was satisfied, however, this Court did not rely on the Eleventh Circuit decision. (*See* Ord. at 7.) It relied on the Alabama district court's conclusion, and the fact that the issue was not raised to the Eleventh Circuit does not affect that finding.

  Next, Mr. Kokorich asserts that Eastern Caribbean Supreme Court Civil Procedure Rules[7] do not allow pre-litigation discovery except in limited circumstances not relevant to this case. (Kokorich Mot. at 17-18.) As Petitioner points out, however, the Supreme Court has made clear that "nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there." *Intel Corp.*, 542 U.S. at 260. Thus, "[a] foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions--reasons that do not necessarily

---

[7] Mr. Kokorich fails to explain why Eastern Caribbean Supreme Court Civil Procedure Rules apply to this case.

12

signal objection to aid from United States federal courts." *Id.* at 262. Whether or not the Eastern Caribbean Supreme Court Civil Procedure Rules would allow this discovery at this time is therefore not relevant to these factors. In his reply, Mr. Kokorich does not dispute this authority, and the Court concludes that the fact that pre-discovery may not be allowed under Eastern Caribbean Supreme Court Civil Procedure does not suggest that Petitioner is trying to circumvent proof-gathering restrictions.

Finally, Mr. Kokorich argues that BVI only permits evidence that is directly relevant, but does not explain how that principle applies to the instant case. (Kokorich Mot. at 18.) In his reply, he again argues that Petitioner must first obtain permission from the BVI court to pursue the derivative claims. (Kokorich Reply at 12.) The Court rejects this contention. As discussed above, Petitioner also has claims that are not derivative claims, and at least one of those claims is based on the complained of transfers. Thus, the evidence sought is relevant even if the derivative claims are ultimately not brought. The Court again concludes that these two factors support granting the § 1782 application.

       c.    Unduly Intrusive or Burdensome Demands

The final *Intel* factor reviews whether the requested discovery is "unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 265. "The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure." *In re Raiffeinsenbank,* 2016 WL 6474224, at *6.

Mr. Kokorich first argues that the discovery sought is not relevant because it concerns the fraudulent transfers between Canopus and Astro Digital, but that Petitioner's prior demand letters are only directed at DHIL and Mr. Kokorich. (Kokorich Mot. at 18-19.) The Court rejects this argument. The Court agrees with Petitioner that "the requests related to the transfer of assets between Canopus and Astro Digital . . . are at the core of the case against Kokorich and could not be more tailored to the litigation." (Pet.'s Opp'n at 23.)

Mr. Kokorich next argues that the § 1782 application seeks confidential commercial information. (Kokorich Mot. at 19.) Mr. Kokorich lists a number of requests that he asserts seeks confidential commercial information, but provides no explanation why these requests seek

13

confidential commercial information or identifies any such confidential information except to state that it is "evident." (*Id.*) This is insufficient, particularly when it is "[t]he party opposing discovery [who] must show that the information is a 'trade secret or other confidential research, development, or commercial information' under Rule 26, and that its disclosure would be harmful to the party's interest in the property." *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 681 (C.D. Cal. 2009) (internal quotation and modification omitted); *see also id. at* 683 ("Without any declarations to support its confidentiality claim, the Court cannot simply assume defendant keeps this information confidential. Thus, defendant has not met its burden to show information responsive . . . are trade secrets or 'confidential . . . commercial information'"); *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987) ("The burden is on the party requesting a protective order to demonstrate that . . . the material in question is a trade secret or other confidential information"), *quoted with approval in Foltz v. State Farm Mut. Aut. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003). The Court finds Mr. Kokorich has failed to satisfy his burden of showing that the discovery seeks confidential commercial information, and therefore rejects this argument.

Last, Mr. Kokorich contends the discovery is a fishing expedition for irrelevant information. (Kokorich Mot. at 19.) Again, this argument is based on a narrow view that the discovery is only relevant if it concerns DHIL directly, such that evidence regarding Astro Digital is irrelevant. This case, however, is based on the transfers between Canopus and Astro Digital, the latter of which Petitioner alleges was formed by Mr. Kokorich to divert assets and business from Canopus. (*See* Kushaev Decl., Exh. 5 at 2.) Thus, information on how Astro Digital was formed, Mr. Kokorich's connection to the company, and its actions are directly relevant to Petitioner's claims that the transfers were fraudulent and harmful to it based on its minority share in DHIL. This includes information about Astro Digital's actions after the sale of the Perseus-M satellites, as part of Petitioner's claim is that Astro Digital then began to compete directly with Canopus, thus taking away business that Canopus would have had. (*See id.*; Clifton Decl. ¶ 19.) The Court concludes that the discovery is relevant, and that this factor continues to support granting the §

1782 application.[8]

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Mr. Kokorich's motion to intervene. Having found that Petitioner has satisfied the § 1782 threshold requirements and that the *Intel* factors support granting the application, the Court DENIES Mr. Kokorich's motion to quash.

IT IS SO ORDERED.

Dated: October 3, 2018

*Kandis Westmore*
KANDIS A. WESTMORE
United States Magistrate Judge

---

[8] For these same reasons, the Court rejects Mr. Kokorich's argument that the subpoenas be quashed under Federal Rule of Civil Procedure 45. (*See* Kokorich Mot. at 21.)

15